IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| PASCALE PIERRE, | : | |
| | : | |
| Plaintiff, | : | Civil Action File No.: |
| | : | _____ |
| v. | : | |
| | : | |
| CITY OF ATLANTA, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

## COMPLAINT FOR DAMAGES

COMES NOW Pascale Pierre (hereinafter "Pierre" or "Plaintiff") and

through her undersigned counsel of record, files this Complaint against City of

Atlanta (hereinafter "Defendant"), showing the Court as follows:

## INTRODUCTION

1.

Plaintiff brings this action for damages based upon the following conduct by

Defendant: violation of her rights under the Americans with Disabilities Act, as

amended, 42 U.S.C. § 12111 *et seq.* (hereinafter "ADA"), and the deprivation of

Plaintiff's rights under color of state law, regulations, custom or usage in violation

of 42 U.S.C. § 1983.  Plaintiff also brings this action under Title VII of the Civil

Rights Act of 1964 (hereinafter "Title VII") because Defendant discriminated

against Plaintiff on the basis of her national origin.

## JURISDICTION AND VENUE

2.

Plaintiff brings this action pursuant to the ADA, and Title VII.  Jurisdiction

of this Court is invoked pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1331 (federal

question) and  28 U.S.C. § 1343 (civil rights).

3.

The unlawful employment practices alleged in this Complaint were

committed within the Northern District of Georgia.  Venue is proper in this Court

under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), as every act of which

Plaintiff complains occurred in the Atlanta Division of the United States District

court for the Northern District of Georgia.

4.

Defendant The City of Atlanta's conduct at issue in this matter was done

under the color of state and local law.

5.

All of Defendant's discriminating and retaliatory conduct described herein was accomplished pursuant to unofficial policy, practice, and custom of The City of Atlanta.

## PARTIES

6.

Plaintiff, a Haitian-American female, is now and was at all times relevant to this action a citizen of the United States entitled to bring an action of this type and nature.  She resides in the State of Georgia.

7.

The City of Atlanta is subject to the jurisdiction of this Court.  The City of Atlanta may be served with process by serving the City of Atlanta Department of Law at 68 Mitchell Street, Suite 4100, Atlanta, Georgia 30303.

8.

Plaintiff is an "employee" within the meaning of 42 U.S.C. § 2000e(f).

9.

Defendant City of Atlanta is an "employer" within the meaning of 42 U.S.C. § 2000e(b).  Defendant City of Atlanta has more than five hundred (500) employees.

10.

Defendant engaged in all of the conduct described herein under color of state and local law.

11.

Defendant's conduct described herein was accomplished pursuant to the unofficial policy and custom of the City of Atlanta, and was committed or authorized by officials whose acts can be fairly deemed to be actions of the City of Atlanta. Specifically, the Atlanta Police Department has a policy or custom of failing to make reasonable accommodations to employees with a disability within the meaning of the ADA.

## ADMINISTRATIVE PROCEDURES

12.

Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 9, 2013.

13.

 The EEOC issued a "Notice of Right to Sue" on September 25, 2014, entitling an action to be commenced within ninety (90) days of receipt of that notice.

14.

Plaintiff has brought suit within ninety (90) days of receipt of the Notice of Right to Sue.

## STATEMENT OF FACTS

15.

Defendant is now, and at all times relevant hereto, has been an employer engaged in an industry affecting commerce.  During all times relevant hereto, Defendant has employed fifteen (15) or more employees for the requisite duration under the ADA.  Defendant is therefore covered under the ADA in accordance with 42 U.S.C. § 12111(5).

16.

In 2002, Ms. Pierre was diagnosed with Crohn's disease.   This condition causes Ms. Pierre to experience symptoms including but not limited to abdominal pain, fever, and significant weight loss.  This condition also requires Ms. Pierre to receive Remicade infusion therapy every eight (8) weeks to decrease the above mentioned symptoms.

17.

In October 2011, Defendant hired Ms. Pierre as a Police Recruit for the
Homicide Department of the Atlanta Police Department.  Ms. Pierre worked
continuously for Defendant until she was fired.

18.

Ms. Pierre's daily responsibilities in the Homicide Department were
administrative and included typing, translating, driving superiors to functions, and
checking-in Atlanta Police Department visitors.  In addition, as a Police Recruit,
Ms. Pierre was required to participate in remedial physical training ("PT") three
mornings a week until she earned admission into the Atlanta Police Department
Academy (the "Academy") by passing the Physical Training Test ("PT-Test").

19.

To pass the PT-Test a Police Recruit was required to a complete a 1.5 mile
run in 15:30 or better and the obstacle course in 2:10 or better.  Defendant also has
an unwritten policy of selectively admitting Police Recruits into the Academy
whose times fell below the written benchmarks.

20.

Inside the Homicide Department, Ms. Pierre experienced "bullying" due to
her being a Haitian-American woman with Crohn's disease.  For example, Sargeant

Sturdivant asked Plaintiff, "Why can't you run.  Those Haitians don't do anything but run down there."

21.

Plaintiff was also ridiculed by Defendant's homicide detectives, who regularly made offensive statements to Plaintiff, such as "those Haitians are gonna come to Atlanta and practice cannibalism…make soup outta people."

22.

Plaintiff was the only person of Haitian decent in the department.  Others who were not Haitian were treated more favorably than Plaintiff.

23.

In March 2012, Ms. Pierre injured her right wrist by pulling a ligament practicing the obstacle course during PT.  Ms. Pierre was placed on a "light duty" order by the physician and had her right arm placed in a cast.  Ms. Pierre still continued to work every day in the Homicide Department and attended weekly physical therapy sessions at Georgia Hand, Shoulder & Elbow.

24.

On August 3, 2012, Ms. Pierre was released from therapy by Dr. Randall Alexander from Georgia Hand, Shoulder & Elbow, but was not approved for

regular duty.  Nonetheless, Defendant instructed Ms. Pierre to resume PT and take the September PT-Test.

25.

In August 2012, Defendant transferred Ms. Pierre from the Homicide Department to the Annex-Property Control Unit ("Annex") without notice.  Ms. Pierre's daily responsibilities now required her to lift heavy personal property being returned to people released from police custody.

26.

In the beginning the September 2012, Ms. Pierre passed her first PT-Test since her injury with a 1.5 mile with a run of time 14:46 and an obstacle course time of 2:01. Ms. Pierre never receive her PT times in writing because of Defendant's custom of verbally shouting PT times, akin to the military.

27.

In preparation for her assumed admission into the Academy, Ms. Pierre informed her supervisor, Sergeant Craig Condon, that she would need a slight schedule adjustment every eight (8) weeks to receive a Remicade infusion treatment for her Crohn's disease.

28.

Sergeant Condon disregarded Ms. Pierre's request and, in lieu of reasonably accommodating her, excluded Ms. Pierre from the October 2012 class roster of the Academy.  Further, Sergeant Condon instructed Ms. Pierre to continue PT with the new hires.  Accordingly, Ms. Pierre watched her peers prepare for their Academy entry without her.

29.

On September 12, 2012, Ms. Pierre experienced a second injury during PT jumping hurdles.  As a result of the injury, Ms. Pierre's legs were bruised and she was no longer able to comfortably walk.

30.

Shortly thereafter, Ms. Pierre emailed Sergeant Condon for permission to visit Georgia Hand, Shoulder, & Elbow for diagnosis and treatment.  Sergeant Condon denied Plaintiff's request.

31.

On September 21, 2012, after Ms. Pierre experienced the second injury, Georgia Hand, Shoulder, & Elbow "officially" released her back to regular duty.

32.

On October 1, 2012, Defendant instructed the injured Ms. Pierre to take another PT-Test.  Ms. Pierre passed the 1.5 mile requirement with a time of 14:54 but was unable to even attempt the obstacle course due to her injury.

33.

On October 10, 2012, Ms. Pierre decided to pay for medical assistance herself since Sergeant Condon would not grant her request to visit Georgia Hand. Shoulder, & Elbow.  Dr. Fox from Resurgens Orthopedics advised her to do "sedentary work only" and forbid climbing, bending, stooping, or lifting.

34.

Ms. Pierre immediately gave Sergeant Condon Dr. Fox's instructions as proof of her physical inability to perform the obstacle course and her need to no longer lift heavy items in the Annex.

35.

Defendant did not grant Ms. Pierre's request for sedentary work and maintained her placement inside the Annex.

36.

On November 1, 2012, Angelia Ratcliff from the Human Resources Department of the Atlanta Police Department informed Ms. Pierre that she was

being terminated from the Atlanta Police Department under the pretext that she
failed the PT-Test.

## CLAIMS FOR RELIEF

### COUNT I
### DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE
### IN VIOLATION OF THE ADA, AS AMENDED

37.

Plaintiff hereby incorporates all previous Paragraphs as if fully restated.

38.

Due to her Crohn's disease, Ms. Pierre has a physical impairment that
substantially limits one or more of her major life activities such that she is a person
with a disability within the meaning of the ADA, as amended.

39.

Because Ms. Pierre has Crohn's disease, Defendant regarded Ms. Pierre as
having a physical impairment that substantially limits one or more of her major
activities such that she is a person with a disability within the meaning of the
ADA, as amended.

40.

Due to her Crohn's disease, Ms. Pierre has a record of a physical impairment that substantially limits one or more of her major life activities such that she is a person with a disability within the meaning of the ADA, as amended.

41.

At all times relevant to this action, Ms. Pierre was capable of performing all the essential functions required for the position of Police Recruit for the City of Atlanta.

42.

Ms. Pierre requested reasonable accommodations that would have allowed her to continue to perform the essential functions of her job as a Police Recruit.

43.

Defendant refused to grant the accommodations Ms. Pierre requested.

44.

Defendant terminated Ms.Pierre's employment, in whole or in part, because of her disability, perceived disability, or record of having a disability.

45.

By terminating Ms. Pierre's employment because of her disability, perceived disability, or record of having a disability, Defendant violated the ADA, as amended.

46.

Defendant treated other employees outside of Ms. Pierre's protected class more favorably.

47.

Defendant's action in subjecting Ms. Pierre to different terms and conditions of employment constitutes unlawful discrimination on the basis of her disability in violation of the ADA, as amended.

48.

Defendant has willfully and wantonly disregarded Ms. Pierre's rights, and Defendant's discrimination against Ms. Pierre was undertaken in bad faith.

49.

The effect of the conduct complained of herein has been to deprive Ms. Pierre of an equal employment opportunity, and has otherwise adversely affected her status as an employee because of her disability.

50.

As a direct and proximate result of Defendant's violation of the ADA, as amended, Ms. Pierre has been made the victim of acts that have adversely affected her psychological and physical well-being.

51.

As a result of Defendant's discriminatory actions against Ms. Pierre, Ms. Pierre has suffered lost compensation and benefits, suffered emotional distress, inconvenience, humiliation, and other indignities.

52.

Pursuant to the ADA, as amended, Ms. Pierre is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages, equitable relief, attorneys' fees, cost of litigation and all other relief recoverable under the ADA, as amended.

## COUNT II
## RETALIATION IN VIOLATION OF THE ADA, AS AMENDED

53.

Plaintiff hereby incorporates all previous Paragraphs as if fully restated.

54.

Ms. Pierre was a qualified individual with a disability.

55.

Ms. Pierre's disability substantially limited one or more of the major life activities.

56.

Ms. Pierre requested reasonable accommodations to allow her to perform the tasks needed to graduate from the Academy.  Specifically, Ms. Pierre requested that she be allowed time to visit the doctor once every eight (8) weeks to receive Remicade infusion therapy for her Crohn's disease.

57.

Ms. Pierre's requests for reasonable accommodations constitute protected conduct under the ADA, as amended.

58.

Defendant retaliated against Ms. Pierre by misrepresenting that she had not passed the PT-Test, and using that misrepresentation as a basis for terminating her employment.

59.

Defendant proffered reasons for terminating Ms. Pierre's employment are a pretext designed to hide Defendant's retaliatory motive.

60.

Defendant's retaliatory actions against Ms. Pierre were in violation of the ADA, as amended.

61.

Defendant willfully and wantonly disregarded Ms. Pierre's rights, and Defendant's retaliation against Ms. Pierre was undertaken in bad faith.

62.

As a result of Defendant's retaliatory actions against Ms. Pierre, Ms. Pierre has suffered lost compensation and benefits, suffered emotional distress, inconvenience, humiliation, and other indignities.

63.

Pursuant to the ADA, as amended, Ms. Pierre is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages, equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

64.

Plaintiff is entitled to an award of her attorney's fees and expenses of litigation on each and every cause of action alleged herein, because Defendant has acted in bad faith, been stubbornly litigious, and caused Plaintiff unnecessary trouble and expense.

## COUNT III: NATIONAL ORIGIN DISCRIMINATION  IN VIOLATION OF TITLE VII

65.

Plaintiff incorporates each of the preceding paragraphs as if fully reinstated herein.

66.

Plaintiff is Haitian; therefore, she belongs to a protected class under Title VII.

67.

Defendants intentionally subjected Plaintiff to a hostile work environment with its severe and pervasive treatment of her based on her national origin.  The Defendant's workplace was permeated with discriminatory intimidation, harassment, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment.

68.

Defendant's discriminatory treatment of Plaintiff included statements that Haitians, like Plaintiff, are cannibals, and that Plaintiff should be able to run fast because Haitians "do nothing but run down there."

69.

Plaintiff was treated less favorably than others outside her protected class

70.

On November 1, 2012 Defendant terminated Plaintiff's employment for an alleged "failure to meet probationary requirements." This statement was false because Plaintiff did indeed pass the PT-Test before she was injured the second time. Plaintiff was terminated, in part, because of her national origin.

71.

In engaging in these actions, Defendant acted with an intentionally discriminatory motive.

72.

Plaintiff has been damaged and continues to be damaged by this discriminatory conduct.

## COUNT IV: VIOLATION OF THE CIVIL RIGHTS ACT OF § 1991

73.

Plaintiff incorporates the preceding paragraphs as if fully restated herein.

74.

Defendant discriminated against Plaintiff, and in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices has not only deprived Plaintiff of equal employment opportunities, but exhibits malice or reckless indifference to the federally protected rights of Plaintiff.

75.

Plaintiff seeks compensatory and punitive damages pursuant to 102(a)(1) of the Civil Rights Act of 1991.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays:

(a)     That Plaintiff's Complaint be granted;

(b)     That this Court issue process and require that Defendant be served as provided by law to answer each and every allegation in the Complaint;

(c)     That a trial by jury be granted as to the Complaint;

(d)     That judgment be granted against Defendant for compensatory damages, including damages for lost earnings, emotional distress, and

for all other damages claimed herein, including punitive damages, in

an amount deemed by this Court to be just and fair and in any other

way in which the Court deems appropriate;

(e)     That the Plaintiff be awarded all back pay and lost benefits resulting

from Defendant's unlawful discrimination and retaliation;

(f)      That all costs and attorney's fees be against Defendant;

(g)     For such additional relief as the Court deems just and proper.

Respectfully submitted this 22bd day of December, 2014.

Molden & Holley, LLC

/s/ Regina S. Molden
Regina S. Molden
Georgia Bar No. 515454
Taylor Bennett
Georgia Bar No. 664063
233 Peachtree Street NE
Suite 1245
Peachtree Center – Harris Tower
Atlanta, Georgia 30303
Telephone:  404-324-4500
Facsimile:    404-324-4501
Email: rmolden@moldenholley.com

Attorney for Plaintiff Pascale Pierre

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1

The undersigned hereby certifies that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1 of the Northern District of Georgia, using a font type of Times New Roman and a point size of 14.

/s/ Regina S. Molden
Regina S. Molden
Georgia Bar No. 515454